# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MISSOURI


SHERIF AHMED ABOUL-MAGD,

Plaintiff,

v.

EMILY TAYLOR, DANIEL ERWIN, and

BUCHANAN, WILLIAMS & O'BRIEN, P.C.,

Defendants.

Case No. 3:25-cv-05015-BCW

---

## EXHIBIT K-17 - DECLARATION OF SHERIF AHMED ABOUL-MAGD


I, Sherif Ahmed Aboul-Magd, under penalty of perjury pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Sherif Ahmed Aboul-Magd. I am the Plaintiff in this civil rights case. I am a United States citizen, a father of twin boys, and a small business owner. I am representing myself pro se.

2. I bring this declaration to supplement my Emergency Motion for Temporary Restraining Order (Doc. 17), to provide sworn context for the record, and to connect the sealed audio/video transcript (Doc. 16) with the timeline of coordinated retaliation by named defendants.

3. I have been under supervised visitation for over a year despite completing more than 60 successful visits, multiple co-parenting and anger management classes, and despite receiving positive supervisor reports recommending unsupervised time. The Guardian ad Litem (Daniel Erwin) has blocked reunification without any finding of danger, safety risk, or abuse.

4. On February 13, 2025, GAL Daniel Erwin was recorded during a private phone call stating to me: "You're being punished by me… because I can." This statement, and others made during that exchange, were captured in a digital recording I have preserved. While that call is not part of

the sealed video filed as Doc. 16, it is referenced in my filings, and the sealed video independently confirms the coercive, retaliatory environment that followed in court.

5. On **February 21, 2025**, parenting time was unilaterally canceled by opposing counsel **Emily Taylor** via email. This was done without a filed motion, hearing, or court order. The visitation supervisor later confirmed this change occurred based solely on Emily's email. As of today, May 12, 2025, I have not seen my children since that date. I have missed over two and a half months of bonding time, including critical developmental milestones in my sons' first year of life. This loss, inflicted without judicial process, has caused deep emotional trauma and represents ongoing irreparable harm.

6. On May 6, 2025, I appeared for hearing in Jasper County Family Court. I was told by Judge Kevin Selby that in order to speak, I would need to take the stand and testify under oath. I had not filed my certified Strike Statement in advance, but my intent to present it was made clear through multiple prior filings, and it was understood that the May 6 hearing would be the forum for its presentation. Despite this, I was not permitted to read from or enter that statement into the record. I was instead forced into direct examination without warning, while facing unresolved threats of contempt and criminal escalation. I was then subjected to a full protection order, compelled psychological evaluation, and warrantless search conditions on my own residence, all issued without filed motions, live witness testimony, or evidentiary basis.

7. Named defendants Emily Taylor and Daniel Erwin were physically present in court for the May 6 hearing. Neither disclosed to the judge that they were already under federal litigation. Neither intervened to stop the coercion or correct the record. Their silence speaks directly to coordination under color of law.

8. The transcript of the May 6 hearing (attached separately as Exhibit K-8) and the sealed audio/video together confirm a courtroom environment of bias, hostility, suppression, and threats. Judge Selby repeatedly made personal attacks, accused me of being a "thug and a bully," and announced findings that functionally mirrored criminal charges, without motion, sworn evidence, or trial process.

9. On May 8, 2025, I filed my Emergency TRO and sealed video. Hours later, the same court entered a new Temporary Order for Visitation (Exhibit K-14b), locking in the same unconstitutional conditions, and affirming domestic violence findings without trial.

10. That same day, Defendant Emily Taylor emailed me a proposed judgment for pre-signature, attempting to finalize the ruling without my agreement (Exhibit K-14c). Her actions occurred after receiving ECF notice of my TRO, and confirm procedural coordination and intent to suppress federal oversight. At the conclusion of the May 6 hearing, Judge Selby asked if I wanted to see the order 'before he signed it and approved it as to form,' and I responded, 'I would like to see it.' I was never given the opportunity to review or approve the order. Emily Taylor's email falsely implied that I had consented, despite my on-record refusal and immediate federal objection.

11. On May 6, 2025, both Bethany Parsons and David Larson, defense counsel of record for the named federal defendants, were physically present in the courtroom. At that time, their clients (Defendants Daniel Erwin and Emily Taylor) had already been served in this federal case, and both attorneys had entered appearances on their behalf. While present, they witnessed Plaintiff being forced to testify, subjected to abuse findings without a pending motion, and denied a fair opportunity to respond. Neither attorney disclosed their federal defense role to the court nor intervened to prevent the retaliation now documented in this record. Their presence during these events raises serious conflict of interest concerns and confirms that defense counsel had firsthand, real-time knowledge of the violations now before this Court.

12. The findings issued at the May 6, 2025 hearing, including statements that I strangled my ex-wife, threatened to kill her, and exhibited a weapon, mirror the pending felony charges against me in Jasper County (Case No. 24AO-CR00970-01). These charges were filed long after the alleged incidents, with no contemporaneous police reports, and were based entirely on delayed statements and recordings gathered during civil custody litigation. I was arrested on October 22, 2024, in court, following over 20 successful supervised visits. The arrest warrant was executed the same day I appeared in family court seeking parenting time. These facts confirm that the May 6 hearing was not an isolated civil proceeding, it was used to validate and reinforce a criminal case coordinated through sealed litigation tactics and procedural ambush, under color of law. A hearing in the related criminal matter, Case No. 25AO-CR00345, is now scheduled for June 2, 2025, further escalating the risk of coordinated prosecution arising from the May 6 findings.

12a. Attached as Exhibits K-15 through K-15e is the full criminal filing set for Case No. 24AO-CR00970-01, which includes my October 22, 2024 arrest warrant, probable cause statement, formal charge information, amended complaint, and bond conditions. These documents confirm I was arrested during a family court appearance after more than 20 clean supervised visits. The allegations cited, strangulation, threats, and weapon use, were filed long after the alleged events and are based entirely on private civil litigation materials, not police reports or direct witness statements. The May 6, 2025 hearing repeated the same allegations, word-for-word, and issued court findings that functionally ratified my felony charges without giving me a trial. This confirms my belief that Missouri courts are working in coordination to layer criminal charges on top of custody suppression to eliminate my parental rights through the use of sealed courtroom findings and off-the-record coercion.

12b. Between April 2 and April 5, 2025, three different Missouri state court judges recused from my custody case. Judge Luke Boyer recused during the middle of my April 2 hearing, after it became clear I was challenging the structure and impartiality of the proceedings. Judge Nicole Carlton was removed by granted motion under Rule 51.05, and the newly assigned Division IV judge recused within days of taking over. These rapid and successive recusals, especially one that occurred during active proceedings, confirm that the underlying case had become procedurally unstable and politically toxic. This breakdown in judicial continuity further supports my claim that state court was no longer a neutral forum, but a venue used to retaliate and suppress my protected federal activity. It was shortly after these recusals that Emily Taylor and Daniel Erwin escalated proceedings against me in both family and criminal court.

13. On May 7, 2025, just one day after the May 6 hearing, the court issued denials on more than a dozen motions I had filed. These included motions to strike unlawful findings, remove the GAL, reinstate visitation, and challenge ongoing suppression. Each denial included unusually long justification notes that deviated from standard court practice, which typically involves one-line docket entries. These notes did not reflect real analysis. They were crafted after the May 6 hearing, not before, and appeared to be written for external eyes, likely to create the illusion that my arguments were meaningfully considered. This confirms that the court was not conducting neutral review, but engaging in post-hearing damage control. These entries were not rulings, they were a defensive narrative to shield misconduct now under federal review.

14. On April 21, 2025, the Jasper County Prosecutor's Office filed a misdemeanor charge in Case No. 25AO-CR00345, alleging that I violated an order of protection by sending a text message to the mother of my children. The message, sent on December 15, 2024, was peaceful, fatherhood-focused, and expressed concern for the children's health while requesting updates during travel. It contained no threats, demands, or inappropriate content. A true and accurate copy of this message is attached as Exhibit K-18. This charge was filed after I publicly challenged GAL Daniel Erwin and Attorney Emily Taylor in court, and after filing multiple federal civil rights claims. This confirms that parenting-related speech was weaponized through criminal process, under color of law, to reinforce custody suppression and retaliate for protected expression.

15. On May 6, 2025, the courthouse was nearly empty. Aside from a few staff, there were no other litigants, attorneys, or members of the public present, only myself, my assistant, opposing counsel, the GAL, and five deputies. My parents had accompanied me to court that day, but they were initially denied entry. After a delay, they were eventually allowed in. The courtroom itself remained guarded by five deputies throughout the proceeding, far more than is standard. The deputies were unusually quiet, overly polite, and intensely observant. As someone who has been systematically discredited and stripped of access to his children, their sudden attentiveness and the restricted courtroom access felt orchestrated, as though they were anticipating escalation or operating under special instruction due to the legal circumstances. This unease deepened when I later learned that my criminal hearing had been scheduled the very next day, May 7, for June 2, 2025, at the same 1:30 PM timeslot and courtroom, an arrangement that had never occurred during the custody case until that date. This sequence of events felt profoundly unsafe. I believe I am being targeted for discrediting, incarceration, or procedural takedown under the guise of routine hearings. I respectfully request not only emergency review, but protection from what now appears to be a coordinated, multi-court pattern of retaliation and suppression.

16. I have now been forced to choose between my children and my rights. I am not being punished for violence. I am being penalized for asserting my rights, seeking due process, and exposing constitutional violations.

17. I have not seen my children since February 21, 2025. They have started walking. I have missed their first year of life. I held them when they were born. I was there at every prenatal appointment. I named them. And now, I am forced to fight just to be recognized as a father, while defendants use courtrooms and sealed coordination to erase my presence from their lives.

18. This declaration is not simply an act of procedure. It is a sworn request for federal protection. I have followed every rule. I have certified every exhibit. And I have remained peaceful while enduring systemic harm.

19. On May 12, 2025, my personal assistant and restaurant manager was pulled over in Joplin, Missouri, without cause. Two patrol cars arrived on the scene before either officer approached her vehicle. Officers claimed her taillights were malfunctioning, though no lights were broken and she had committed no visible traffic violation. She was questioned about MacCheesy's apparel located in the back of her vehicle. One officer reached through her barely cracked window and forcibly rolled it all the way down. They ran her plates over their radio and then told her, "Get home right now and get those fixed," without issuing a citation. She is publicly known to be my assistant, and this incident occurred just four days after I filed this TRO. I believe this stop was targeted intimidation tied directly to my federal litigation and confirms that retaliation under color of law is not limited to me, but extends to those publicly associated with me.

19a. After the May 6, 2025 hearing, one of the deputies assigned to courtroom security walked me and my assistant out of the courthouse to our vehicles. This was highly unusual, as no such escort had ever occurred during any prior hearing. The deputy stood outside and did not leave until both of us had entered our vehicles and driven off. While standing outside, I observed him speaking into his radio while watching our cars depart. He appeared to be verbally identifying our vehicles as we left. He was also wearing a body camera during this entire encounter, despite there being no incident, threat, or need for de-escalation. This felt staged and intentional. Given the timing—just two days before the court denied all of my pending motions, and four days before my assistant was pulled over in Joplin by two patrol units—this incident strongly suggests that courthouse deputies were engaging in post-hearing surveillance or coordinated observation under color of law.

20. I respectfully request that this Court grant immediate partial or full injunctive relief under Rule 65, or schedule a prompt hearing to review the record. Any further delay risks irreparable constitutional harm, federal obstruction, and the ongoing erosion of my rights as a father, litigant, and citizen. I have no other forum of protection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2025

Sherif Ahmed Aboul-Magd

Pro Se Plaintiff

saa898@gmail.com

(417) 459-5377

138 Park Central Square, Suite #312

Springfield, MO 65806